IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

**NEKOASE ANTWAN VINSON**,

     **Movant,**

v.

                                                   **Civil Action Nos. 3:12-cv-01372**
                                                   **(Criminal No: 3:09-cr-00099-2)**

**UNITED STATES OF AMERICA,**

     **Respondent.**

**PROPOSED FINDINGS AND RECOMMENDATIONS**

     Pending before the Court is Movant's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. (ECF No. 347). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and by Standing Order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, the undersigned respectfully **RECOMMENDS** that Movant's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 be **DENIED,** and this action be **DISMISSED, with prejudice,** and removed from the docket of the Court.

**I.**    **Procedural History**

     On April 22, 2009, Movant Nekoase Antwan Vinson ("Vinson") was indicted by a federal grand jury on one count of conspiracy to distribute 50 grams or more of cocaine

1

base in violation of 21 U.S.C. § 846. (ECF No. 1). On April 13, 2010 Vinson entered into an agreement with the Government, in which he agreed to plead guilty to one count of conspiracy to distribute 5 grams or more of cocaine base in violation of 21 U.S.C. § 846. (ECF No. 186 at 1). In the plea agreement, Vinson "retain[ed] the right to seek appellate review of the District Court's determination of the Sentencing Guideline range, if an objection [was] properly preserved" but "knowingly and voluntarily waive[d] his right to seek appellate review of any sentence of imprisonment or fine imposed by the District Court on any other ground, so long as that sentence [was] below or within the Sentencing Guideline range determined by the District Court prior to any departure or variance." (*Id.* at 5). Vinson also signed a Stipulation of Facts, which set forth the facts comprising the offense of conviction and relevant conduct for that offense. (*Id.* at 8). Vinson stipulated that from September 2001 to at least June 2009, he "recruited co-conspirators, supplied co-conspirators with cocaine base to sell, sold cocaine base, and shared in profits made by co-conspirators." (*Id.*). Vinson also stipulated that he (1) "acted as a manager or supervisor (but not an organizer or leader) of the conspiracy which involved five or more participants," (2) "was responsible for the distribution of 240 grams of cocaine base," and (3) "possessed one or more firearms during the conspiracy period in connection with his participation in the conspiracy." (*Id.*). The Government stipulated that "the facts do not support enhancements for obstruction under U.S.S.G. § 3C1.1 or use of a minor under U.S.S.G. § 3B1.4." (*Id.*). On April 16, 2010, Vinson entered his guilty plea in accordance with the plea agreement. (ECF Nos. 185, 356).

Vinson's sentencing hearing was held on July 19, 2010. (ECF No. 357). Based upon the presentence report, which the Court adopted in full, (*Id.* at 6), Vinson's base offense level was 32 due to his relevant conduct involving 240 grams of crack cocaine. (*Id.* at 7). He received a two-level increase for possessing a dangerous weapon during the conspiracy, and a three-level increase for his role as a manager or supervisor of five or more people. (*Id.*). However, he received a two-level deduction for acceptance of responsibility, and the Government moved for a third level deduction, which brought Vinson's total offense level down from 37 to 34. (*Id.* at 7-8). Vinson had eight criminal history points,[1] which placed him in Criminal History Category IV, and resulted in an advisory sentencing range of 210 to 262 months. (*Id.* at 8). No objection was raised by either party to the Court's calculations under the Sentencing Guidelines. The District Court then granted Vinson a two-level downward variance based upon a more favorable crack to powder cocaine ratio, and sentenced him to 168 months imprisonment, which corresponded with the low end of the applicable guidelines range for an offense level of 32. (ECF No. 357 at 12-13).

On March 5, 2012, Vinson mailed a letter to the District Court Clerk inquiring about the status of a § 2255 motion he allegedly filed on July 5, 2011. (ECF No. 344). On March 8, 2012, the Clerk mailed Vinson a written response advising him that the Clerk's office had no record of receiving a § 2255 motion from him. (ECF No. 345). On May 2,

---

[1] Vinson's presentence report reflects that he received (1) 1 point for Possession of Cocaine in March 2001, under U.S.S.G. § 4A1.1(c); (2) 2 points for Possession of a Firearm by a Prohibited Person in October 2002, under U.S.S.G. § 4A.1(b); (3) 2 points for Obstructing an Officer in December 2002, under U.S.S.G. § 4A1.1(b); (4) 1 point for Possession of a Controlled Substance in April 2004, under U.S.S.G. § 4A1.1(c); and (5) 2 points under U.S.S.G. § 4A1.1(d), because he was on probation for the sentence of his 2004 offense at the time of committing the instant offense. (ECF No. 225 at 11-13).

2012, Vinson re-filed his § 2255 motion, (ECF No. 347), along with a letter dated April 25, 2012, from a Federal Correctional Counselor certifying that "[d]ue to reasons beyond our knowledge and control, [the Clerk's] mail was delivered to [Vinson] on Monday, April 23, 2012." (ECF No. 346 at 2). On October 18, 2012, the United States responded to Vinson's § 2255 motion, objecting to it as untimely filed. (ECF No. 360). On November 16, 2012, the undersigned ordered Vinson to supply evidence and argument supporting a finding that his § 2255 Motion was timely submitted to prison authorities. (ECF No. 364). On December 6, 2012, Vinson responded with a memorandum and a copy of a letter he allegedly sent to trial counsel on July 21, 2010 requesting that counsel file an appeal for him. (ECF No. 373 at 1, 5). Vinson also repeatedly referenced a Certificate of Service for his § 2255 motion, but failed to attach the Certificate to his response. (*Id.* at 1, 2).

On July 25, 2013, an evidentiary hearing was held to address the timeliness of Vinson's motion, as well as the substantive merit of his claims of ineffective assistance of counsel. (ECF No. 424). Both Vinson and his trial counsel testified at the hearing. (*Id.*). On August 23, 2013, Vinson provided supplementary documentation regarding the timeliness of his § 2255 motion, which consisted of a Certificate of Service for his § 2255 motion dated July 5, 2011, and a commissary receipt for postage stamps dated March 9, 2011. (ECF Nos. 420, 420-1).

II.     **Movant's Grounds to Vacate, Set Aside, or Correct His Sentence**

Vinson asserts that trial counsel provided ineffective assistance by (1) "failing to file an appeal, after being requested to do so," and (2) failing "to object to the fact that the two prior 2002 convictions for possession of a firearm by a prohibited person and

4

obstruction of an officer were consolidated for plea and sentencing, and not a basis for four [criminal history] points." (ECF No. 347 at 4).

### III. Timeliness of Movant's § 2255 Motion

Section 2255 motions are subject to a 1-year period of limitation, which begins to run from the latest of:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f). For a defendant who does not appeal, his conviction becomes final when his opportunity to appeal expires. *See Clay v. United States*, 537 U.S. 522, 524-25, 532, 123 S.Ct. 1072, 155 L.Ed.2d 88 (2003); *Washington v. United States*, No. 2:07-cr-00180, 2011 WL 7790890, at *1 n.1 (S.D.W.V. June 8, 2011); *see also United States v. Parks*, Crim.A. 3:03-00099-0, 2006 WL 659511, at *1 (S.D.W.V. Mar. 15, 2006).

The limitations period is a non-jurisdictional affirmative defense and thus may be waived. *See Day v. McDonough*, 547 U.S. 198, 205, 126 S.Ct. 1675, 164 L.Ed.2d 376 (2006) (addressing AEDPA's one-year limitation period on § 2254 petitions); *Hill v. Braxton*, 277 F.3d 701, 705 (4th Cir. 2002) (same). The Court may *sua sponte* consider the timeliness of a § 2255 petition, *United States v. Blackstock*, 513 F.3d 128, 133 (4th Cir. 2008), provided the government has not intelligently chosen to waive the statute of

limitations defense. *See Day*, 547 U.S. 198, 210 n. 11. Before dismissing a § 2255 motion on the basis of timeliness, however, "the district court should afford an opportunity" for the movant to address the issue. *Hill*, 277 F.3d at 706; *see Blackstock*, 513 F.3d at 133.

Here, Vinson's judgment was entered on July 20, 2010, (ECF No. 230), and became final fourteen days later on August 3, 2010. *See* Fed. R. App. P. 4(b)(1) (time for filing a notice of appeal) & 26(a)(1) (computing time). Thus, his one-year limitation period ended on August 3, 2011. Vinson alleges that he timely filed his § 2255 motion pursuant to the prison mailbox rule, by delivering it to the prison mail room on July 5, 2011. *See Houston v. Lack*, 487 U.S. 266, 275, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988); *United States v. McNeill*, No. 12-6129, 2013 WL 1811904, at *2 (4th Cir. 2013) (holding that "a pro se litigant's legal papers are considered filed upon delivery to prison authorities, not receipt by the clerk"). On March 5, 2012, Vinson inquired as to the status of his § 2255 motion, (ECF No. 344), and on March 8, 2012, the Clerk's office informed him that they had no record of receiving his § 2255 motion. (ECF No. 345). For reasons beyond the knowledge and control of the correctional facility, the Clerk's letter was not delivered to Vinson until April 23, 2012. (ECF No. 346 at 2). On or before April 30, 2012, Vinson re-submitted a copy of the § 2255 motion that he had allegedly previously filed. (ECF Nos. 347, 347-1).

At the evidentiary hearing held on July 25, 2013, Vinson testified that on July 5, 2011, he brought his § 2255 motion to the legal mail office, and personally "gave it to the people at mail." (ECF No. 424 at 16). Subsequently, on August 23, 2013, Vinson provided an original Certificate of Service certifying that he mailed his § 2255 motion on July 5, 2011 "by depositing same in the prison legal mailbox with First Class postage

affixed and addressed" to the Clerk's office. (ECF No. 420-1 at 2). He also provided a commissary invoice dated March 9, 2011, reflecting the purchase of a book of stamps for $8.80. (ECF No. 420-1 at 1). In light of Vinson's sworn certificate of service, evidence of his prior purchase of stamps, and the correction facility's apparent history of unexplained mail delay, Vinson has satisfied his initial burden of submitting "a sworn statement and some evidence to support his claim that he timely delivered the filing to a prison official," *Ray v. Clements*, 700 F.3d 993, 1012 (7th Cir. 2012). The burden of proof now shifts to the Government to prove that Vinson's § 2255 petition was untimely. *McNeill*, 2013 WL 1811904, at *4; *Allen v. Culliver*, 471 F.3d 1196, 1198-99 (11th Cir. 2006). At the evidentiary hearing, the Government cross-examined Vinson regarding the steps he took to mail the motion, but did not offer any evidence to contradict Vinson's testimony. (ECF No. 424 at 12-24). No supplementary evidence such as mail logs or affidavits have since been submitted by the Government.

Accordingly, the undersigned **FINDS** that the United States has failed to establish its affirmative defense that the § 2255 motion was untimely.

### IV.     Standard Under 28 U.S.C. §2255

A motion made pursuant to 28 U.S.C. § 2255 is a collateral attack on a conviction or sentence imposed in a separate proceeding. *Wall v. Kholi*, 131 S.Ct. 1278, 1284-85, 179 L.Ed.2d. 252 (2011). To succeed on such a motion, the movant must prove that the conviction or sentence was imposed in violation of the laws or Constitution of the United States; or the court imposing the sentence lacked jurisdiction; or the sentence exceeded the maximum authorized by law; or the sentence was otherwise subject to collateral attack. 28 U.S.C. § 2255. Because a § 2255 motion seeks to deny, evade, or

impeach a judgment, claims of error that have previously been raised and rejected on a direct appeal of the judgment may not be raised again in a § 2255 motion. *United States v. Harrison*, No. 96-7579, 1997 WL 499671, at *1 (4th Cir. Aug. 25, 1997) (citing *Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976).

In this case, Vinson attacks his conviction and sentence on the ground that his Sixth Amendment right to the effective assistance of counsel was denied at the sentencing and appellate stages of the proceedings when his trial counsel: (1) failed to object to the Court's calculation of his criminal history points; and (2) failed to file an appeal pursuant to his specific request. (ECF No. 347 at 4). The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to effective assistance of counsel during critical stages of criminal proceedings, *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), including sentencing, *see Glover v. United States,* 531 U.S. 198, 203–04, 121 S.Ct. 696, 148 L.Ed.2d 604 (2001), and direct appeal. *Douglas v. California,* 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963). While assistance "which is ineffective in preserving fairness does not meet the constitutional mandate," *Strickland,* 466 U.S. at 685-86, "defects in assistance that have no probable effect upon the trial's outcome do not establish a constitutional violation." *Mickens v. Taylor,* 535 U.S. 162, 166, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2001).

Under *Strickland*, a defendant can prove ineffective assistance of counsel by meeting the requirements of a two-prong test. The defendant carries the burden of satisfying both prongs of the test, and "a failure of proof on either prong ends the matter." *United States v. Roane,* 378 F.3d 382, 404 (4th Cir. 1994). First, the defendant

8

must show that counsel's representation fell below an objective standard of reasonableness. When evaluating counsel's performance under the first prong of *Strickland,* "judicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. Thus, the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance … [and] that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks omitted). The inquiry under *Strickland* is "whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Harrington v. Richter*, 131 S.Ct. 770, 788, 178 L.Ed.2d 624 (2011) (internal quotations omitted).

The second prong of the *Strickland* test requires the defendant to affirmatively establish prejudice; that is, "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. In the context of sentencing, prejudice is established if the defendant demonstrates a reasonable probability that, but for counsel's errors, he would have received a more favorable sentence. *Glover,* 531 U.S. at 203–04; *U.S. v. Harris,* No. 3:12–CV–127, 2013 WL 4749903, at *7 (E.D.Va. Sept. 3, 2013. In the context of an unsuccessful appeal, the prejudice prong is satisfied when the defendant shows a reasonable probability that, but for his counsel's failure to raise a particular issue, he would have prevailed on the appeal. *Smith v. Robbins*, 528 U.S. 259, 285-86, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000).

When the claim of ineffective assistance is based upon counsel's failure to file an appeal after being asked to do so by the defendant, the *Strickland* analysis is simpler. It is now well established that "a criminal defense attorney's failure to file a notice of appeal when requested by his client deprives the defendant of his Sixth Amendment right to the assistance of counsel, notwithstanding that the lost appeal may not have had a reasonable probability of success." *United States v. Peak*, 992 F.2d 39, 42 (4th Cir. 1993); *See also United States v. Poindexter*, 492 F.3d 263, 273 (4th Cir. 2007) ("[A]n attorney is required to file a notice of appeal when unequivocally instructed to do so by his client, even if doing so would be contrary to the plea agreement and harmful to the client's interests."). "Moreover, even if the defendant fails to clearly instruct counsel to note an appeal, counsel must still consult with the defendant about an appeal under certain circumstances." *United States v. Malone*, 442 Fed.App'x 864, 866 (4th Cir. 2011) (citing *Roe v. Flores–Ortega,* 528 U.S. 470, 478, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000)). As the United States Court of Appeals for the Fourth Circuit explained in *Malone*:

> Specifically, counsel is required to consult with a defendant "when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Consulting entails "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes."  (citing *Flores–Ortega,* 528 U.S. 470 at 478-80).

To establish prejudice, a defendant need only show a reasonable probability that, but for his counsel's failure to consult with him about an appeal or follow the defendant's directive, an appeal would have been filed. *Malone*, 442 Fed.App'x at 866.

10

## V. Discussion

### A. Failure to Object to Criminal History Points

Vinson argues that trial counsel provided ineffective assistance for failing to object to the Court's calculation of his criminal history points. (ECF No. 347 at 4). According to Vinson, two of his 2002 state convictions were consolidated for plea and sentencing purposes, and therefore should not have served as a basis for four criminal history points. (*Id.*). Vinson insists that "had [his] lawyer raised this claim at sentencing, [his] sentence would have been reduced by 14-30 months." (*Id.*). However, Vinson misinterprets the applicable sentencing guidelines.

Under the sentencing guidelines, a criminal defendant is assigned "2 points for each prior sentence of imprisonment of at least sixty days." U.S.S.G. § 4A1.1. Moreover, the guidelines specifically instruct that "[p]rior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense)." U.S.S.G. § 4A1.2(a)(2) (emphasis in original).

Vinson's presentence report reflects that on October 16, 2002, he was arrested for Possession of a Firearm by a Prohibited Person. (ECF No. 225 at 12). On December 11, 2002, Vinson was arrested again for Obstructing an Officer. (*Id.*). On December 20, 2002, Vinson pleaded guilty to both the Firearm and the Obstruction charges, and received concurrent sentences of 6 months and 1 day of jail. (*Id.*). At the evidentiary hearing, Vinson confirmed that he was arrested on both October 6, 2002 and December 11, 2002 for two separate offenses occurring at different times, and that he received concurrent sentences of six months and one day, for each offense. (ECF No. 424 at 33).

Thus, although Vinson was sentenced for both convictions on the same day, there was an intervening arrest between his firearm offense and his obstruction offense. Vinson's sentences were properly counted separately, and he correctly received four criminal history points for the two convictions. *See United States v. Gillespie*, 406 Fed.App'x 749, 750 (4th Cir. 2010). Trial counsel did not provide ineffective assistance "for failing to assert a meritless objection in the district court." *United States v. Anthony*, 149 Fed. App'x 135, 136 (4th Cir. 2005).

Therefore, the undersigned **FINDS** that trial counsel did not provide ineffective assistance for failing to object to the calculation of Vinson's criminal history points.

B. **Failure to File an Appeal**

Vinson next asserts that he received ineffective assistance because his trial counsel failed to file an appeal on his behalf, despite Vinson's specific request to appeal. (ECF No. 347 at 4). In response to that claim, Vinson's trial counsel filed an affidavit with the Court stating that he had no recollection of being instructed by Vinson to file an appeal. (ECF Nos. 409 at 1). Accordingly, the undersigned conducted an evidentiary hearing on July 25, 2013 to determine the factual issue of whether Vinson requested that his trial counsel note an appeal. (ECF No. 424).

At the hearing, Vinson testified that immediately after being sentenced, and while still in the courtroom, he asked counsel to file an appeal for him. (*Id.* at 9). Vinson stated that he requested an appeal "because I felt like I had too much time, and I wasn't supposed to be in that criminal history category." (*Id.* at 10). According to Vinson, counsel told him "okay, that he would" file an appeal. (*Id.*). There was no further conversation, nor was anyone else involved in the discussion. (*Id.*). Vinson further

12

testified that he did not talk to counsel again following his sentencing, but that he "wrote a letter and sent out like two days after that ... asking him will he file an appeal." (*Id.*). Vinson alleges that he mailed the letter from Carter County Jail to trial counsel's office, but did not ever receive a response back from him to the letter. (ECF No. 424 at 11).

In contrast, Vinson's trial counsel testified that immediately after Vinson's sentencing, he "had a very brief conference with him and his --- what I call his family," although Counsel could not remember which family members were present. (*Id.* at 52). Counsel indicated that his "conference with Mr. Vinson was extremely short ... it could have been anywhere from six to twelve minutes," according to the corresponding billing records. (*Id.*). Counsel testified that he had no "independent recollection of Mr. Vinson ever instructing [him] or directing [him] to file an appeal," (*Id.*), and did not believe that Vinson made such a request in the minutes immediately after the sentencing. (*Id.* at 56). According to Counsel, Vinson did not "act in any way that made me believe that he was dissatisfied with the sentence." (ECF No. 424 at 53). Counsel also denied ever receiving a letter from Vinson instructing him to file an appeal. (*Id.* at 56). When asked about a copy of the purported letter that was supplied by Vinson as part of this action, Counsel testified that the first time he had seen that letter was a few days before the evidentiary hearing when the document "was provided to me by fax from [the United States Attorney's] office." (*Id.* at 56-57). Upon seeing the letter, Counsel "instructed [his] office to search [Vinson's] entire file. There [was] no letter from Mr. Vinson in [the] file." (ECF No. 424 at 56). Counsel added:

> I truly, truly suspect – well, it's not what I suspect. Jails are not places where your jailhouse secretaries make you a copy because you want to send the original to an attorney and retain a copy. I truly doubt that Mr. Vinson wrote me a letter two days after the sentencing and had his

13

> jailhouse secretary make him a copy for his records, but I – I have no independent knowledge of that.

(*Id.* at 57).

Considering the record in its entirety, the undersigned finds that Vinson's testimony simply is not credible, whereas Counsel's testimony is credible. As Counsel testified, the evidence against Vinson appears to have been "overwhelming." (ECF Nos. 225 at 6-9; 424 at 54). Furthermore, Vinson was facing a 21 U.S.C. § 851 sentencing enhancement due to a prior drug conviction, which would have exposed him to a mandatory minimum sentence of 20 years imprisonment. (ECF No. 424 at 43, 54-55). Instead, Counsel negotiated a plea agreement in which Vinson avoided the § 851 enhancement, and the Government stipulated that Vinson had not engaged in any obstruction of justice and was not responsible for using any minors during the conspiracy. (*Id.* at 44-45). Vinson himself testified that his offense level was calculated in accordance with the terms of the plea agreement, and that none of the adjustments for relevant conduct came as a surprise to him. (*Id.* at 30-31). Counsel explained that he did not object to the calculation of Vinson's criminal history points "[b]ecause I believed then as I believe now, that Mr. Vinson is dead wrong, that the calculation of the guideline was correct inasmuch as there were extra points assigned for two different offenses, but since under the guidelines you have an intervening arrest that precipitated the additional points, I think that my analysis was correct then." (*Id.* at 50). Again, Vinson testified that he knew his guidelines range would be 210 to 262 months, and that he had no reason to, nor did he ever want his attorney to object to the guidelines range. (*Id.* at 35-36). He further admitted that he understood an objection to the guidelines calculation would have to be made at the sentencing hearing in order to preserve the

14

issue for appeal. (*Id.* at 28). Vinson also acknowledged that his ultimate sentence fell significantly below his expected guidelines range, as the District Court granted him a 42-month downward variance and sentenced him to 168 months imprisonment. (*Id.* at 36). Additionally, Vinson conceded that in light of the plea agreement, which included a waiver of his right to appeal his sentence so long as it fell within or below the guideline range determined by the Court, "there was nothing left to appeal." (ECF No. 424 at 28, 36). Thus, Vinson's explanation for seeking appeal, that he felt he received "too much time," is simply inconsistent with the circumstances surrounding his plea and sentencing, as well as his own testimony.

In contrast, Counsel's testimony is entirely consistent, both internally and with the available case record. First, Counsel reasonably testified that he was "very pleased with" the result of Vinson's sentencing hearing, and that he "would have been very surprised" if Vinson had instructed him to appeal his sentence immediately after the hearing. (*Id.* at 52-53). Counsel had "no independent recollection of Mr. Vinson telling [him] to appeal" and Vinson "didn't act in any way that made [Counsel] believe that he was dissatisfied with the sentence." (*Id.* at 53, 55). Second, Counsel has been a practicing attorney for twenty years, during which time he has represented many criminal defendants in both state and federal court. (*Id.* at 40-41). As he explained, "if some defendant says, 'I want to appeal my sentence', that triggers certain reaction and that is, it triggers ... legal consequences. It triggers some type of reaction from the defense attorney. You cannot just ignore that." (*Id.* at 65). Counsel further testified that if Vinson had raised the issue of appealing his sentence, "[i]t would have at least started the conversation ... concerning a waiver and whatnot, whether this is the desire,

15

unequivocal demand or command, or whether this is just a conversation, maybe what we should do, maybe what we shouldn't do, maybe what's best for me, maybe what's not." (*Id.*). Third, even if Counsel were surprised or disagreed with Vinson's desire to file an appeal, Counsel would have had "absolutely nothing to gain or lose by either filing and appeal or not filing an appeal in Mr. Vinson's case." (ECF No. 424 at 56). As Counsel explained, he could have noted an appeal and filed an *Anders* brief, or he could have filed an appeal and asked to withdraw from the case and have another attorney appointed in his place. (*Id.*). Notwithstanding his belief that an appeal would have been fruitless in this case, Counsel testified that he would not have ignored an express directive by Vinson to note an appeal. (*Id.* at 58).

     Moreover, the Court is not convinced of the authenticity of the letter Vinson claims to have mailed to Counsel on June 21, 2010. There is no corroborating evidence beyond Vinson's own self-serving testimony to support his claim that it was in fact written and mailed to Counsel. On cross examination, Vinson conceded that he did not save a copy of the envelope for the letter, he did not have any records showing that he paid for postage for the letter, and he never requested that any family members follow up with counsel regarding when the appeal would be filed. (*Id.* at 36-37). Counsel denied ever receiving the letter, and expressed skepticism regarding the likelihood that Vinson would have been able to retain a copy of the letter in the Carter County Jail. (*Id.* at 56-57). Furthermore, the undersigned notes that in his initial § 2255 motion, Vinson's only allegation was that "[i]mmediately after being sentenced in Court" he instructed his attorney to file an appeal. (ECF No. 347 at 4). Movant conceded that he did not submit a copy of the letter with his initial § 2255 motion, and he only submitted the letter after

16

the Court ordered him to produce some evidence supporting his claim. (ECF No. 424 at 37). It is highly implausible that Counsel would have ignored both Vinson's verbal request and a subsequent written request for an appeal.

Having reviewed the record in its entirety, taking into account the credibility of both Vinson and his trial counsel, and carefully weighing the testimony of both witnesses in light of the other evidence in the record, the undersigned **FINDS** that Vinson has failed to demonstrate by a preponderance of the evidence that he requested his trial counsel to file an appeal. The undersigned further **FINDS** that the outcome of Vinson's sentencing was so favorable that his trial counsel had no reason to believe that nonfrivolous grounds for an appeal existed, or that Vinson was interested in filing an appeal. As a result, trial counsel's failure to file an appeal in this case did not constitute ineffective assistance of counsel.

## VI. Proposal and Recommendations

For the reasons set forth above, the undersigned respectfully **PROPOSES** that the District Court accept and adopt the findings proposed herein and **RECOMMENDS** the following:

1. Movant's Motion that the Court consider the merits of his § 2255 Motion, (ECF No. 373), be **GRANTED**;

2. Motions to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (ECF No. 347) be **DENIED**; and

3. This civil action be **DISMISSED, with prejudice,** and removed from the docket of this Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code,

Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Chambers and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to the Movant, Respondent, and any counsel of record.

**FILED**: October 28, 2013.

_____
Cheryl A. Eifert
United States Magistrate Judge